STATE v. R. B. CROWDER.

(Filed 26 January, 1927.)

1. Criminal Law—Motions—Abatement—Pleas—Appeal and Error—Affidavits—Presumptions.

Where the defendants in a criminal action before trial move to quash the indictment in the bill upon affidavits not appearing on appeal to have been denied, and accepted in the Supreme Court by the Attorney-General to be true, the appeal thereon will be determined upon the allegations of the affidavit as a correct statement of the truth as therein alleged.

STATE *v.* CROWDER.

**2. Same—Grand Jury—Solicitors—Courts—Appeal and Error.**

The grand jury in passing upon a criminal indictment act independently of the solicitor, and receive such instructions as they may desire from the judge presiding, and when it is made to appear that the solicitor was present in the grand jury room assisting the grand jury by explaining the evidence and the law, the defendant's plea in abatement should be granted upon a sufficient affidavit of· the defendant upon motion made before the trial.

APPEAL by defendant from *Cranmer, J.,* at June Term, 1926, of VANCE.

The defendant was convicted on several bills of indictment charging him with the embezzlement of certain funds, the property of the Farmers and Merchants Bank, and from the judgment pronounced he appealed, assigning among others the alleged errors herein set forth.

Before pleading to the charge, the defendant upon affidavits which were not denied, moved to quash the several bills of indictment on two grounds: (1) that the solicitor was in the grand jury room and participated in the finding of the bills; (2) that an interested member of the grand jury participated in finding the bills.

Before pleading the defendant also filed a plea in abatement based upon affidavits which were not denied. In these affidavits it was alleged that the grand jury gave only one hour and a half to the consideration of the eleven bills; that they examined only one witness for the State, and that he had no personal knowledge of the transactions charged against the defendant; that the solicitor was with the grand jury during one hour of this time, "participated in the examination of the witness and explained the testimony to the grand jury and advised and procured their action in finding a true bill"; and that one of the grand jurors was a depositor and creditor of the bank and interested in the settlement of its affairs. The motion to quash and the motion in abatement were denied and the defendant excepted.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*D. P. McDuffie and Thomas M. Pittman for defendant.*

ADAMS, J. In the brief of the Attorney-General it is said, "The State itself filed no affidavits contesting the allegations of fact in the defendant's affidavits," and in the defendant's brief it is affirmed: "There was no denial of the allegations of the affidavits or the plea in abatement; the fact was not questioned and the motion was argued on both sides upon the assumption that the same was true."

It is not our province to speculate as to the result had counter affidavits been filed and had the facts been found, for as the argument here

assumed the truth of the affidavits, we must consider the defendant's motions upon the theory that the allegations are admitted facts; and these allegations raise the decisive question whether advising and procuring the action of the grand jury in returning a true bill is sufficient to sustain a plea in abatement.

Into the origin, history and development of the grand jury we need not inquire. Whether it was anciently a body not only of accusers, but of triers, is immaterial; in this country it is regarded as an informing and judicial tribunal, exercising functions which are original, complete and susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any proper source. 28 C. J., 763; *U. S. v. Thompson,* 251 U. S., 406, 413; 64 Law Ed., 333, 342.

The relation existing between a public prosecuting officer and the grand jury to whom he transmits his bills of indictment is not to be determined by any rule of universal application. The rules differ in various jurisdictions. Indeed, there is difference of opinion as to the practice at common law, one saying that the practice authorized the attendance of the prosecuting officer upon the sittings of the grand jury; another that he had no right to attend the sessions at all; a third that at common law the grand jurors conducted the examination of witnesses themselves, not permitting the attorney for the crown to enter the room. 28 C. J., 802; *U. S. v. Wells,* 163 Fed., 313, 324; The Grand Jury, Edwards, 127. In some States the prosecuting officer may be present except when the grand jurors are deliberating or voting; in others it is held to be improper for him to appear before them when they are in session; and still in others that it is proper for him to be present and to give such general instructions as may be required.

Which of these rules, if either, has been adopted in North Carolina? On this point our decisions, while relatively few, are very pronounced. Preliminary reference may be made to a statement written by *Chief Justice Pearson:* "The province of a grand jury is, not to try the party, but to inquire whether he ought to be put on trial; and the purpose is, to save the citizen the trouble, expense, and the disgrace of being arraigned and tried in public on a criminal charge unless there be sufficient cause for it." *S. v. Branch,* 68 N. C., 186. The method of ascertaining whether the party should be put on trial was pointed out by *Bynum, J.,* in *Lewis v. Comrs.,* 74 N. C., 194: "Private individuals who may desire to prosecute offenders have the right to inform the solicitor and have him to frame a bill of indictment against the accused, endorsing upon it the name of the prosecutor, as such, with such other witnesses as he may desire, and send the bill with the witnesses to the grand jury." As to the prosecuting officer he observed in the same opinion: "A solicitor is not a judicial officer. He cannot administer an

oath. He cannot declare the law. He cannot instruct the grand jury in the law. That function belongs to the judge alone. If the grand jury desire to be informed of the law or other of their duties, they must go into court and ask instructions from the bench. So the solicitor has no business in the grand jury room. He is not a component part of that body. It is true, the grand jury is a component part of the court, but it is an independent and self-acting body, clothed with the very highest functions and, as such, is responsible to the law and to society. None but witnesses have any business before them. No one can counsel them but the court. They do not communicate with the solicitor, but with the court, either directly or through an officer sworn for that purpose. They act upon their own knowledge or observation in making presentments. They act upon bills sent from the court with the witnesses. The examination of the witnesses is conducted by them without the advice or interference of others. Their findings must be their own, uninfluenced by the promptings or suggestions of others or the opportunity thereof. We know there have been wide departures from the principles here announced, in this and perhaps in other judicial districts. It has become necessary, therefore, to review the ground, and recur to the earlier and more correct practice as it was established by those who have gone before us, and has been handed down by tradition and the recollection of the oldest members of the court."

The case is cited with approval as to this point in a learned and trenchant concurring opinion written by *Justice H. G. Connor* in *S. v. Lewis,* 142 N. C., 636.

It will be noted, then, that our decisions are to be classed among those which discountenance the custom of permitting the prosecuting attorney to attend the sessions of the grand jury. His right to be present while the grand jurors are deliberating or voting is denied by courts that approve the custom; and it is held with practical unanimity that it is improper for him to attempt to influence the grand jury's action or decision. True, in some jurisdictions it has been held that his presence in the grand jury room and his active participation in the examination of witnesses is at most an irregularity; but in opinions written by justices distinguished alike for their learning in the law and for their fidelity to the preservation of established principles this Court has emphatically disapproved the position. Nevertheless, we should be loath to hold that the mere presence of the solicitor in the grand jury room constitutes sufficient cause for abatement in the absence of some evidence of conduct or speech apparently prejudicial to the accused, or to suffer a bare unsubstantial technicality to defeat the administration of justice. But what shall be said of the allegation, not only that the solicitor was present with the grand jury one hour and participated in the examina-

tion of witnesses, but that he "explained the testimony to the grand jury and *advised* and *procured* their action in finding a true bill?" Here is a distinct averment that the defendant was prejudiced. In *Com. v. Bradney,* 126 Pa., 199, it is said in substance that the grand jury alone must consider and apply the evidence, and that the prosecuting officer must not attempt either to influence their action or to give effect to the evidence adduced. This, we think, is the uniform rule everywhere applied. Taking the affidavits to be true, as counsel have treated them in the briefs, and applying principles which have met with approval in practically all jurisdictions, we can reach only one conclusion, that is, that the plea in abatement should have been sustained. To hold otherwise would be, not only to disregard the former decisions and the recognized policy of this Court, but to lay down a principle which has received almost universal disapproval.

We may be assured that the diligent and capable officer who prosecuted these actions had in mind only a commendable purpose to render needed service in the performance of an official duty, and that what he did was an inadvertent "departure from the principles here announced"; but it is far better that new bills be drafted than that these principles be rejected or disregarded.

Error.